# SUPREME COURT

OF THE

## STATE OF COLORADO.

## January Term, 1911.

[No. 6298.]

### NITRO POWDER COMPANY v. KEARNS.

1. Evidence—Admissibility—In an action for the price of goods sold, correspondence of the defendant admitting the purchase or the receipt of the goods, is admissible as evidence of the liability.—(5, 6)

So, an invoice of the goods transmitted by the seller and of which the buyer admits the receipt.—(5, 6)

The invoice showing that the goods were shipped to another, the defendant may be examined as to whether he had any contract with this party to furnish him such merchandise as that in question.—(6-8)

2. ——Party as Witness—The plaintiff may call the defendant and examine him as to any matter which may tend to establish his demand.—(6, 7)

And an officer of the plaintiff may testify as to any discrepancy in the different bills rendered by the plaintiff, and as to who was the owner of the goods alleged to have been sold to the defendant, and as to whether any part of the sum demanded has ever been paid.—(7)

(1 vol. 50)                                                                1

**3.**  ——Admission — With a Qualification — Defendant's admission of the accuracy of the plaintiff's account, but accompanied by a claim of a greater amount due to himself, is competent evidence of what is so admitted; and plaintiff may prevail unless the counter-claim is affirmatively established.—(9, 10)

*Error to Denver District Court*—Hon. George W. Allen, Judge.

Messrs. Waldron & Thompson and Mr. C. J. Blakeney for plaintiff in error.

Mr. Milton Smith, Mr. Charles R. Brock and Mr. W. W. Platt for defendant in error.

Mr. Justice Hill delivered the opinion of the court:

The complaint of the plaintiff (who is plaintiff in error here), in substance, alleged, that it sold and delivered goods, wares and merchandise to the defendant between September 26th and November 4th, 1904, of the reasonable value of $900.00, for which said defendant promised and agreed to pay said sum, and that said defendant had not paid said sum or any part thereof. The answer contained: first, a general denial; second, by way of a separate defense, it alleged that some time in the year 1904, defendant purchased from one Maclean certain powder of the value of $900.00, for which he agreed to pay said Maclean; that subsequent, but for what cause the defendant could not allege, the plaintiff sent him a bill for $765.00, which was for the same powder sold by Maclean to him, and for the same powder sued for in this action; that the $765.00 was the price for which Maclean purchased said powder from the plaintiff; that the difference between $900.00 and $765.00 was the profit which Maclean made upon the powder, which he had so purchased from the plaintiff and which he sold individually to the defendant;

that after the death of Maclean the plaintiff made claim to all funds in said estate as trust funds under a contract alleged to exist between Maclean and the plaintiff; that the defendant made claim against the estate of Maclean and against said funds as trust funds for a sum of money claimed to be due for fuse handled and sold by Maclean under contract between Maclean and defendant; that the moneys received from the sale of said fuse were mingled with the funds of said estate; that in the month of April, 1905, an effort was made between the plaintiff, the personal representatives of the estate of Maclean and the defendant to settle and adjust all matters between them, and at said time the question arose as to whether the $900.00, which defendant had agreed to pay Maclean for the powder, should be treated as the claim of the said estate of Maclean against the defendant, or as a claim of the plaintiff against the defendant; that it was then agreed between the plaintiff, the personal representatives of the estate of Maclean, and the defendant, that the $900.00, which defendant had agreed to pay Maclean for the powder purchased as aforesaid, should be treated and considered as a claim of the said estate against this defendant, and was so treated and taken into consideration in the adjustment and settlement of the claim of this defendant against said estate, and at the same time and in connection therewith, and in consideration thereof, the claim of the plaintiff against said estate was also adjusted and settled, and all matters between the plaintiff, the personal representatives of said estate, and this defendant, were then and there adjusted, and said claim of $900.00 was so adjusted and treated by all of the said parties by the express agreement, knowledge and acquiescence of the plaintiff, and by the settlement thus made the plaintiff received from said estate an amount of

money which all of the parties agreed should be paid to the plaintiff, by said settlement, as aforesaid, the defendant likewise received from said estate an amount which all of the parties agreed should be paid to him, and thereby the claim of the estate of Maclean against this defendant for the $900.00 was fully paid, liquidated and satisfied.

The plaintiff, by replication, denied each and every allegation contained in the answer. There was a jury trial. At the close of the plaintiff's testimony, upon motion of the defendant, a nonsuit was granted and the plaintiff brings the action here for review upon error.

The first error urged is in granting the motion of nonsuit; the second, is in the rejection of competent testimony. We will consider the second first.

The deposition of Mr. Metzger, the vice-president and general manager of the plaintiff company, shows that at the time these goods were sold, the plaintiff was doing business in this state through its agent, one A. A. Maclean with offices in the city of Denver. The evidence of this witness sets forth in full the contract entered into between the plaintiff company and its agent, showing the conditions under which the agent had a right to sell its manufacturing products at not less than certain prices. His compensation was stated in the contract. All moneys collected were to be deposited in a bank in Denver, to the credit of and to belong to the plaintiff company. The evidence further shows, that, about October 8th, 1905, one of the counsel for the plaintiff, called upon the defendant at his office in the city of Denver and presented for payment plaintiff's statement of account made out in its favor; that the defendant, among other things, stated to him: ''That is all right; I got that stuff, but my books show that after crediting that on my books, my books show they

still—the plaintiff company—owe me about $200.00"; that a little later in the conversation defendant repeated, "That the account was all right, and that he had gotten the powder, but that it was paid for—having been—it was credited on his books, and that his books, after crediting it, showed that there was still $200.00 which was due from the Nitro Powder Company to him."

The defendant was called as a witness by the plaintiff, under the statute, and was permitted to testify that he had received from plaintiff a letter dated April 25, 1905, which had been made exhibit "A." He was then asked if he had replied thereto. An objection to this question was sustained. The plaintiff offered in evidence this letter written by it to the defendant, which was, upon notice, produced in court by the defendant. This letter purports to have been written at Kingston, New York, the home office of the plaintiff, and reads:

"We will draw on you the 5th of May for $765.00 due us for powder sold you by Mr. A. A. Maclean, and for which amount we sent you several statements. Should you prefer to remit, kindly advise and oblige."

The court refused to admit this letter in evidence. Plaintiff also offered defendant's letter replying to the above, which reads:

"Acknowledging yours of the 25th ult., my books show a balance due me from the Nitro Powder Company, hence it will be unnecessary to make any draft on me, for same will be refused."

This letter was likewise rejected. In all of this we think the trial court erred. The plaintiff's letter, when properly identified, was admissible as preliminary evidence in showing what the defendant's letter referred to and purported to answer, and, when considered together the defendant's letter was

competent as a self-disserving admission bearing upon the question of his receipt of the goods, which was a material issue in the case, as stated by this court in the case of *Cooper v. Perry, Admr.*, 16 Colo., at page 437: "No rule of evidence is better settled than that letters, written by a party to the action, containing self-disserving admissions, are competent evidence against him."

The defendant also produced in court, upon notice, certain invoices purporting to be those of the plaintiff to the defendant, of the sales in question. These invoices were dated at plaintiff's western office, 51 Bank Block, Denver, Colorado; they were made out upon the billhead of the plaintiff and purport to be separate invoices for these goods as each shipment was made of the sales which make up the total of the items in the statement, which was presented to the defendant by one of the plaintiff's counsel. The defendant was permitted to answer to the effect that he had received from the plaintiff the invoices but the court, upon objection, refused to permit the invoices to be introduced in evidence. The court also sustained objections to the question propounded to Mr. Kearns as to whether he had ever made any reply to these invoices. Upon five out of the six invoices offered in evidence, there was marked the words "Shipped Orman & Crook, Sunset, Colo." or "Arrow Head, Colo." The defendant was asked if he had any contract with Orman & Crook to furnish any powder or dynamite upon their contract on the Moffat road in the fall of 1904, to which question an objection was sustained, as was also another to the question as to whether Mr. Kearns had ever received any dynamite from any one at Sunset, Colorado, shortly after the 27th day of September, 1904, in all of which we think the trial court again erred. Under our statute the plaintiff had a right to call the

defendant as a witness, and by him establish any of the facts necessary to sustain his case, if he could.

By the pleadings, the material issue was whether the plaintiff had sold and delivered certain property to the defendant, and any competent evidence tending to establish those facts should have been admitted. We think, when taking into consideration the fact that the agent of the plaintiff who made the alleged sale had since died, and it was necessary for the plaintiff to establish his case by the best competent evidence he could secure, that the questions above indicated were competent as having a bearing upon that question.

The court also erred in sustaining the objections to the interrogatories propounded to Mr. Metzger wherein he was asked if Mr. Kearns had ever replied to any of the many bills which had been mailed to him. While it is true, as argued, that the answers by Mr. Metzger to the interrogatories, as well as the answer by the defendant to the same question at the trial, might or might not have tended to establish the fact which the plaintiff sought to have sustained, yet the questions were relevant to that issue and should have been answered.

The court also erred in sustaining objections to the interrogatories propounded to Mr. Metzger wherein he was asked to explain why, if bills calling for $765.00 had been mailed defendant, that subsequent bills calling for $900.00 had been mailed to him; also, to interrogatories wherein he was asked to state whose powder it was that was sold and delivered to the defendant, the price of which this suit was brought to recover; also, to interrogatories to which he answered that $765.00 was the amount of the sales at eight and one-half cents per pound, as reported to the plaintiff company by Maclean, while the invoices mailed defendant by Maclean, as plaintiff's agent,

were at ten cents per pound, making a total of
$900.00; also, to the interrogatories wherein Mr.
Metzger was asked to state whether or not the defend-
ant had ever paid the $900.00, or any part thereof.
When it had been shown that the death of the agent
Maclean had occurred after the date of these sales
and prior to the time of bringing the suit, these mat-
ters were all pertinent to the issue, and those requir-
ing it were subject to explanation.

We are also of the opinion that, under the cir-
cumstances, as shown here, it was competent to have
admitted in evidence the invoices which the defend-
ant testified he had received from the plaintiff, and
also answers to the questions showing what position
the defendant had taken concerning them. While
the fact of the receipt of the invoices alone would
probably not be conclusive of the receipt of the goods,
yet it might have a bearing upon that fact, and, along
with other evidence, was competent for that purpose.
—*Freas v. Truitt et al.*, 2 Colo. 489; *Field v. Moul-
son*, 2 Wash. C. C. Rep. 155; *Weigle v. Brantigan*, 74
Ill. App. 285; *Peoria G. S. C. Co. v. Turney*, 58 Ill.
App. 563; *Sturtevant v. Wallack*, 141 Mass. 119;
*Fiske, etc., Co. v. Evans*, 60 N. Y. 640.

In view of another trial we think it proper to
state, that, eliminating that portion of the other evi-
dence erroneously rejected, which the record does
not show what it would have disclosed, the motion
for nonsuit should have been overruled. When the
letters, invoices, etc., and the other competent evi-
dence rejected, which the records show what it was,
is considered in connection with the oral admissions
of the defendant as to the receipt of the goods, etc.,
we think the plaintiff established a *prima facie* case.

The defendant contends where the admission of
the purchase and receipt of the goods was accom-
panied with the further statement by the defendant,

"my books show that after crediting that on my books, my books, show they still—the plaintiff company—owe me about $200.00.    *    *    *    that it was paid for    *    *    *    that his books, after crediting it, showed that there was still $200.00 which was due from the Nitro Powder Company to him''; that in such case the entire statement must be accepted, in which, if it admits the purchase, it also shows that the goods were likewise paid for, and that besides this offset of payment the plaintiff was owing the defendant $200.00 in addition, and thereby the plaintiff, by his own evidence, had proved that he had no case and that the nonsuit was properly granted.    This position is not well taken for two reasons.    The first, is that the question of payment in this jurisdiction is an affirmative defense and must be specially pleaded.    The defendant having failed to affirmatively plead the question of payment for these goods, to the plaintiff, it was not an issue in the case and for that reason evidence upon a subject which had not been made an issue by the pleadings, was irrelevant to the question under consideration and could not be used to vitiate the admissions which pertain to a fact which was in issue.—*Esbensen v. Hover et al.,* 3 Col. App. 467; *Perot v. Cooper,* 17 Colo. 80; *Thomas v. Carey,* 26 Colo. 485; *Florence O. & R. Co. v. First Nat. Bank,* 38 Colo. 119; *Harvey v. D. & R. G. R. R. Co.,* 44 Colo. 258.

This same rule as to pleading payment has been followed by the federal courts in this state.—*Hummel v. Moore,* 25 Fed. 380.

The second reason is that while the full statement of a party, when his admission is resorted to as evidence against him, must be received, it does not follow that every part must necessarily be credited; they are before the jury to be considered and weighed precisely as other evidence.    Where a party admits

the existence of the accuracy of certain items charged against him, although at the same time he set up an offset or states, as in this case, what his books show, his admission is competent evidence to justify a recovery for the debt or items thus admitted unless the alleged set-off is duly proved. The assertion in an admission that a set-off exists, or that his books show so and so, does not prove their existence, although the admission might conclusively establish the debt claimed to be due from the party to whom the admission .was made. Again, admissions are made under a variety of circumstances which add to or detract from their value as evidence, and it is for the jury to determine, when all the facts are placed before them, whether the entire statement, or what portion of it, should be accepted.—*Delamater v. Pierce*, 3 Denio's Rep. 315; Am. & Eng. Enc. of Law, vol. 1 (2d ed.), sec. 722; Greenleaf on Evidence, vol. 1 (15th ed.), sec. 201; Elliott on Evidence, vol. 1, sec. 241; *Thrall v. Smiley*, 9 Cal. 529; *Ayers et al. v. Metcalf et al.*, 39 Ill. 307; *Simpson v. First Nat. Bank*, 129 Fed. 257.

For the reasons stated the judgment is reversed and the cause remanded; the parties will be allowed to amend their pleadings as they may be advised.

*Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT concur.