**Sage & Company, Plaintiff in Error, v. Chicago Steel Foundry Company, Defendant in Error.**

### Gen. No. 16,729.

1. SALES—*motion to direct verdict.* In an action to recover the price of a car of coal, it is error to direct a verdict where there is evidence of delivery, the mine weight, and selling price.

2. ACCOUNT STATED—*admission of correctness question for jury.* It is a question for the jury as to whether holding an invoice a week, without objection, is an admission of its correctness.

3. ACCOUNT STATED—*account rendered.* Where defendant receives an invoice for a car of coal purchased from plaintiff, and retains the same a week without objecting, it is to be regarded as *prima facie* correct and raises a question for the jury as to whether there is an account stated.

Error to the Municipal Court of Chicago; the HON. EDWIN K. WALKER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Reversed and remanded. Opinion filed October 16, 1912.

POPE, HOIG & FULLER, for plaintiff in error.

LOESCH, SCOFIELD & LOESCH, for defendant in error.

MR. JUSTICE BAUME delivered the opinion of the court.

Plaintiff in error, Sage & Company, a corporation, brought suit against defendant in error, the Chicago Steel Foundry Company, to recover $68.93, for a car of coal. At the close of the evidence for plaintiff in error the court directed a verdict for defendant in error, and rendered judgment on the verdict against plaintiff in error for costs.

The evidence introduced by plaintiff in error tended to show the following facts: On January 15, 1910, Donald A. Sage, the president of plaintiff in error, had a conversation over the telephone with some one in the office of defendant in error, wherein, in reply to the question whether he had any coal, Sage said he had a small car on the Illinois Central tracks in Chicago, which he would sell to defendant in error. He further said he would not make a delivered price, but if defendant in error would state how much the charge for switching would be, he would figure it out and bill the coal at a delivered price, defendant in error to pay the freight and switching charges; that he would guarantee the coal to be in Chicago; that it had been there for three days and he would bill it to defendant in error at $2.90 per ton. The person acting for defendant in error then said: "We will take the car." On the same day Sage gave an order to the Illinois Central Railroad Company to deliver the car of coal in question, billed as No. 83649, which was then at Fordham, the distributing point for carload freight on the Illinois Central Railroad, to defendant in error, consignee, destination 19th and Rockwell streets, Chicago, via C. B. & Q. Ry., and received from the Illinois Central Railroad Company a receipt for such order. Also on the same day plaintiff in error mailed to defendant in error a written communication, acknowledging the order for the carload of coal and advising defendant in error that a receipt had been issued by the Illinois Central Railroad for the delivery of the car to defendant in error, and plaintiff in error enclosed in said communication an invoice of the coal

billed at the mine, weight 64,400 pounds at $2.90 per ton, total $93.38, with a notation thereon as follows: "Freight and switching chargeable to consignee." This invoice was received by defendant in error on January 17, 1910. On January 19, 1910, plaintiff in error received through the mail a written confirmation order from defendant in error bearing date January 17th, for "one car Mine Run coal $2.90 delivered our switch." Upon receipt of this order Sage informed defendant in error by telephone that he could not accept the order upon the terms indicated; that he did not agree to make delivery at the switch of defendant in error. Evidence was also introduced of the existence of a uniform trade custom in the Chicago wholesale coal market that the delivery of coal in carloads was effected by directing the initial carrier to deliver the same to the consignee, and that such direction to the initial carrier and an acceptance by it constituted a delivery to the consignee; that the freight and switching charges followed the coal, and it was the duty of the final consignee to pay such freight and charges, for which, when ascertained and paid, he was entitled to credit. It was admitted by counsel for defendant in error that such custom existed. On January 25, 1910, plaintiff in error received in due course of mail the identical invoice sent by it to defendant in error on January 15, preceding, upon which invoice, when returned and received by plaintiff in error, there appeared written in lead pencil the word "Freight," followed by the figures "24.45" beneath the invoice price $93.38, and also the figures "57.93" beneath a line drawn below the figures "24.45." These figures, as they thus appeared, manifestly indicated an intention on the part of some one to deduct a freight charge of $24.45 from $93.38, the invoice price, and to designate the difference or balance which was computed at $57.93. The difference should properly have been computed as $68.93, but the error in computation is without significance.

Sage testified that the notations appearing upon the invoice in lead pencil did not appear thereon when the same was sent to defendant in error on January 15.

The record discloses that the motion to direct a verdict was urged upon the ground that there was no evidence from which the jury could determine the weight of the car of coal, and the amount due, if any, from the defendant to the plaintiff.

It is a well established and oft repeated rule that on a motion to direct a verdict the trial court is not permitted to weigh the evidence, but should submit the case to the jury if there is any evidence, which, with all reasonable inferences that may be drawn therefrom, fairly tends to prove the plaintiff's case.

Upon the evidence adduced, as herein before stated, the jury without acting unreasonably might have returned a verdict finding the issues for plaintiff in error. By the trade custom proven and admitted to exist the delivery of the car of coal to the Illinois Central Railroad, consigned to defendant in error, constituted a delivery of the coal to defendant in error. The invoice of the coal stating its weight and gross price, sent by plaintiff in error to defendant in error, was an account rendered in the usual course of business, which account was subject to a deduction for freight and other charges to be paid by defendant in error. The account, as rendered, was received by defendant in error and retained by it for at least one week without objection, and when returned by it to plaintiff in error it bore upon its face some evidence of the amount of the freight charged by the carrier.

It has been held that an account rendered and not objected to within a reasonable time is to be regarded as admitted by the party charged to be *prima facie* correct, and to make the account rendered an account stated. Wiggins v. Burkham, 10 Wall. (U. S.) 129. See also B. S. Green Co. v. Smith, 52 Ill. App. 138; Weigle v. Brautigam, 74 Ill. App. 285; Rudolph Wurlitzer Co. v. Dickinson, 153 Ill. App. 36. Whether the

retention by defendant in error of the account rendered, without objection, for the length of time stated, amounted to an admission that the account was correct, and the force and effect to be given the notations in lead pencil upon the account rendered, were questions for the jury. Moran v. Gordon, 33 Ill. App. 46.

For the error in directing a verdict for defendant in error the judgment is reversed and the cause remanded.

*Reversed and remanded.*